UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

GERARDO SANCHEZ-RAMIREZ,

                    Defendant.

No. CR-10-6041-FVS

ORDER DENYING MOTION TO
VACATE SENTENCE

**THIS MATTER** comes before the Court based upon Gerardo Sanchez-Ramirez's motion to vacate his 210-month prison sentence.  28 U.S.C. § 2255.  Mr. Sanchez-Ramirez wants the Court to resentence him to a term of 120 months in prison.  For the reasons set for below, the Court declines to vacate his sentence.

**BACKGROUND**

On February 11, 2010, law enforcement officers obtained a warrant to search a house in Pasco, Washington.  Gerardo Sanchez-Ramirez was present in the house.  The officers observed bills and items of personal property that indicated Mr. Sanchez-Ramirez lived there.  In addition, the officers discovered 5.35 pounds of methamphetamine.  Mr. Sanchez-Ramirez made a number of incriminating statements concerning the methamphetamine.  Subsequent testing revealed that the methamphetamine was very pure.  The purity of the drug indicated it

Order - 1

had yet to be "cut" for sale, which, in turn, suggested Mr. Sanchez-Ramirez was a mid- to high-level distributor of methamphetamine.  On April 21, 2010, he was charged with the crime of possession of a controlled substance with the intent to deliver it.  21 U.S.C. § 841(a)(1).  He faced a mandatory minimum sentence of 120 months in prison.  21 U.S.C. § 841(b)(1)(A).  The advisory guideline range was more severe.  Preliminary calculations suggested Mr. Sanchez-Ramirez had an adjusted offense level of 36.  If, as appeared likely, he fell in Criminal History Category II, the guideline range was 210 to 262 months.  An attorney was appointed to represent Mr. Sanchez-Ramirez.  His first attorney arranged a "free talk" with representatives of the United States.  The "free talk" occurred on September 2, 2010.  The persons who interviewed Mr. Sanchez-Ramirez did not think he was being entirely candid with them.  Consequently, counsel for the United States advised Mr. Sanchez-Ramirez's first attorney that the United States would be recommending a prison sentence well above the mandatory minimum.  Mr. Sanchez-Ramirez was dismayed by this news, and, apparently, he blamed the messenger (*i.e.*, his attorney) for the United States' unwillingness to offer a more favorable sentencing recommendation.  The relationship between Mr. Sanchez-Ramirez and his first attorney deteriorated to the point she could no longer serve as his attorney.  On September 14, 2010, a new attorney was appointed. Mr. Sanchez-Ramirez's second attorney attempted to secure a sentencing recommendation from the United States that was acceptable to Mr.

Order - 2

Sanchez-Ramirez.  The United States refused to change its position.
Thus, the second attorney, like the first, was forced to convey
unpleasant information to Mr. Sanchez-Ramirez.  The information was
not well received.

Besides engaging the United States in plea negotiations, Mr.
Sanchez-Ramirez's second attorney also filed a number of motions,
including a motion to suppress the evidence that was sized in the
Pasco house.  On December 7, 2010, the Court denied Mr. Sanchez-
Ramirez's suppression motion.  Mr. Sanchez-Ramirez asked to speak to
the Court *ex parte*.  He expressed his frustration with the United
States' unwillingness to make the concessions he sought.  The Court
declined to become involved in plea negotiations.

Trial was continued to February 7, 2011, and, then, to April 4,
2011.  Mr. Sanchez-Ramirez had little hope of obtaining acquittal by
the jury, but, then again, he did not like the plea agreement the
United States was offering.  He vacillated.  At certain times, he said
he would plead guilty.  At other times, he said he wanted a new
attorney.  On March 31, 2011, he and his second attorney appeared
before the Court.  Mr. Sanchez-Ramirez again expressed frustration
with the United States' unwillingness to offer more generous
concessions in exchange for a plea of guilty.  The Court explained he
could either plead guilty or proceed to trial -- the choice was his.
Ultimately, Mr. Sanchez-Ramirez entered a conditional plea of guilty
that day.  Fed.R.Crim.P. 11(a)(2).  The Court carefully reviewed the

Order - 3

proposed plea agreement with Mr. Sanchez-Ramirez.  Then, and only

then, did the Court accept it.  (Verbatim Report of Change of Plea

Hearing (ECF No. 162) at 27.)

Sentencing occurred on June 23, 2011.  Mr. Sanchez-Ramirez did

not dispute that, based upon the quantity of methamphetamine for which

he was accountable, his base offense level was 38.  Since he had

accepted responsibility for his offense by pleading guilty, the United

States agreed his offense level should be reduced by two levels under

U.S.S.G. § 3E1.1(a), but, since he had entered a conditional plea, the

United States refused to request a one-level reduction under §

3E1.1(b).  Mr. Sanchez-Ramirez had three criminal history points, all

of which stemmed directly or indirectly from a prior conviction for

driving under the influence, so he fell within criminal history

category II.  Given Mr. Sanchez-Ramirez's criminal history category,

and given his adjusted offense level, the guideline range was 210 to

262 imprisonment.  The Court ordered him to serve 210 months in

prison.

Mr. Sanchez-Ramirez appealed.  The Ninth Circuit affirmed his

conviction and sentence on August 8, 2012.  In doing so, the circuit

court upheld the constitutionality of the search of the Pasco house,

and the circuit court upheld the calculation of his guideline range.

Mr. Sanchez-Ramirez is in the custody of the Bureau of Prisons.  On

June 21, 2013, he filed a motion seeking relief under 28 U.S.C. §

2255.  He moves the Court to vacate his 210-month prison sentence and

sentence him, instead, to a term of 120 months in prison.  The United States objects.

**RULING**

Mr. Sanchez-Ramirez cites a number of grounds in support of his § 2255 motion.  Some of them overlap.  In order to facilitate analysis, the Court will combine some of his allegations:

Search of House

Mr. Sanchez-Ramirez claims the search of the Pasco house was unconstitutional.  His second attorney raised this issue in a motion to suppress, which this Court denied.  On appeal, Mr. Sanchez-Ramirez argued this Court erred by denying his suppression motion.  The Ninth Circuit was unpersuaded; rejecting Mr. Sanchez-Ramirez's argument. The fact the Ninth Circuit considered, and rejected, his argument bars him from relitigating the issue in a collateral attack upon his conviction and sentence.  "When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition."  *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir.2000) (citing *United States v. Redd*, 759 F.2d 699, 700-701 (9th Cir.1985)).

Validity of Guilty Plea

Mr. Sanchez-Ramirez attacks the validity of his plea of guilty on the ground he was misled by his second attorney.  As Mr. Sanchez-Ramirez points out, a plea must be knowing, intelligent, and voluntary.  *See, e.g., Loftis v. Almager*, 704 F.3d 645, 647 (9th

Order - 5

Cir.2012) (citations omitted).  In *United States v. Hernandez*, 203 F.3d 614, 618 n.5 (9th Cir.2000), the Ninth Circuit explained the difference between the "voluntariness" of a plea and the "intelligence" of a plea:

> [T]he "voluntariness" of a plea turns on the extent to which a defendant is permitted to make a free choice among the acceptable alternatives available at the plea stage.  The "intelligence" of a plea, on the other hand, turns on whether the defendant's choice among those alternatives is made with the information (and an understanding of the information) necessary to choose intelligently between them.

Mr. Sanchez-Ramirez does not allege his attorney coerced him into pleading guilty.  Rather, he seems to be alleging his plea was not intelligent because his second attorney wrongly assured him he would receive a sentence well below the guideline range if he pleaded guilty.  There are several problems with this claim.  To begin with, it is highly unlikely Mr. Sanchez-Ramirez's second attorney ever gave such an assurance.  At hearings on both December 7, 2010, and March 31, 2011, his second attorney explained Mr. Sanchez-Ramirez was exasperated by the United States' unwillingness to offer a sentencing recommendation that Mr. Sanchez-Ramirez thought was appropriate.  Mr. Sanchez-Ramirez's exasperation with the United States strongly suggests his attorneys provided him with accurate, though unpleasant, information concerning the sentence he could expect to receive.  However, even in the unlikely event his second attorney was overly optimistic, it is well established that an attorney's erroneous

Order - 6

prediction concerning the sentence his client can expect to receive is constitutionally deficient only if the prediction constitutes a "gross mischaracterization" of the likely outcome of the a plea bargain and the prediction is "combined with erroneous advice on the probable effects of going to trial." *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir.1990) (internal punctuation and citations omitted). Mr. Sanchez-Ramirez has offered no evidence even remotely suggesting either circumstance occurred prior to his plea of guilty. Finally, at the change-of-plea hearing on March 31, 2011, Mr. Sanchez-Ramirez was reminded of the recommendation the United States would make at sentencing:

> COURT:    Concerning the length of imprisonment, the agreement says the United States agrees to recommend the court impose a sentence at the bottom of the guideline range as determined by the court at the time of sentencing, and you are free to argue for a mandatory minimum sentence of not less than 120 months. Do you understand that?
>
> DEF.:    Yes.

(Verbatim Report of Change of Plea Hearing at 17-18.) Given that warning, Mr. Sanchez-Ramirez was on notice he could not assume that, by pleading guilty, he would secure a sentence below the guideline range.

### Guideline Calculations

Mr. Sanchez-Ramirez seems to be claiming his second attorney failed to provide constitutionally adequate assistance because, in Mr.

Order - 7

Sanchez-Ramirez's opinion, his second attorney should have challenged the calculation of both his criminal history score and his adjusted offense level. Mr. Sanchez-Ramirez's allegation of ineffective assistance arises in the context of a non-capital sentencing proceeding. In *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir.2006), the Ninth Circuit questioned whether a claim of ineffective assistance of counsel in a non-capital sentencing proceeding is governed by the two-part test that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Assuming, for purposes of argument, the *Strickland* test does apply, Mr. Sanchez-Ramirez must demonstrate both that his second attorney's performance at sentencing was deficient and he suffered prejudice as a result. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Neither of Mr. Sanchez-Ramirez's complaints concerning the calculation of his guideline range has merit. Turning, first, to his criminal history score, the Presentence Investigation Report ("PIR") stated he had been convicted in Franklin County (Washington) District Court in 2008 of the crime of driving under the influence. He does not deny the existence of this conviction. Thus, his second attorney had no reason to challenge his criminal history score. Turning, next, to Mr. Sanchez-Ramirez's adjusted offense level, he does not seem to be attacking the calculation of his base offense level, which was 38. Nor does he suggest the Court erred by reducing his base offense level by two levels for acceptance of responsibility. His only complaint

seems to be that his second attorney failed to challenge the United States' decision not to request the "third point" under § 3E1.1(b). If this is Mr. Sanchez-Ramirez's complaint, it is contradicted by the record.  The Ninth Circuit considered, and upheld, the United States' decision not to request the "third point."  Mr. Sanchez-Ramirez may not relitigate the circuit court's ruling under § 2255.

Mitigating Factors

Finally, Mr. Sanchez-Ramirez seems to be claiming his second attorney failed to adequately present mitigating information at sentencing.  He says his second attorney should have emphasized the following:  his conduct was aberrant; a sentence of 210 months in prison is excessively harsh when one compares that sentence with the sentences other criminals receive for worse behavior; the fact he is an illegal alien will increase the severity of his punishment; he is truly remorseful; and he is unlikely to commit another crime.  Given Mr. Sanchez-Ramirez's allegations, the Court has reviewed the record of the sentencing hearing.  The record reflects his second attorney forcefully argued for the mandatory-minimum sentence of 120 months. Among other things, he noted that the instant offense is Mr. Sanchez-Ramirez's first felony (his only other conviction was a DUI); that Mr. Sanchez-Ramirez was being punished far more harshly than anyone else who was involved in the crime; that Mr. Sanchez-Ramirez's children would suffer as a result of his imprisonment; and that he had attempted to cooperate.  (Verbatim Report of Sentencing Hearing (ECF

Order - 9

No. 161) at 15-23.)  Looking back, it is always possible to identify arguments a defense attorney might have made.  However, the test is not whether there are arguments Mr. Sanchez-Ramirez's second attorney might have made, but whether his second attorney's performance at sentencing was objectively unreasonable when measured by prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.  Mr. Sanchez-Ramirez has failed to establish it was.  The Court could stop there.  "Failure to meet either prong [of the *Strickland* test] is fatal to a claim [of ineffective assistance] and there is no requirement that [a reviewing court] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir.2013) (quoting *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052).  But in the interest of completeness, the Court will press on.  Even if Mr. Sanchez-Ramirez had shown deficient performance, he still would have to demonstrate prejudice.  "With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir.2013).  At sentencing, Mr. Sanchez-Ramirez had to face a damning circumstance.  Namely, he previously had admitted that he had possessed over five pounds of methamphetamine; methamphetamine that was very pure -- so pure that its' very purity suggested he was a mid- to high-level distributor.  Nothing his attorney could have said or

Order - 10

done would changed that circumstance; and it was that circumstance that weighed most heavily in the Court's decision to impose a sentence of 210 months imprisonment.  (Verbatim Report of Sentencing Hearing at 25-29.)  Thus, there is no reason to think the outcome would have been different had Mr. Sanchez-Ramirez's second attorney made the arguments he claims his second attorney should have made.  His claim of ineffective assistance at sentencing fails.

**IT IS HEREBY ORDERED:**

1. Gerardo Sanchez-Ramirez's motion for appointment of counsel (**ECF No. 167**) is **denied.**

2. Gerardo Sanchez-Ramirez's motion to vacate his sentence (**ECF No. 165**) is **denied.**

3. The Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to Gerardo Sanchez-Ramirez and to counsel for the United States.

**DATED** this ___1st___ day of October, 2013.

                          s/ Fred Van Sickle
                         Fred Van Sickle
             Senior United States District Judge

Order - 11